*In the Matter of Gerald S. Dory*
No. 1084, Sept. Term, 2018
Opinion by Leahy, J.

**Estates and Trusts > Guardianship > Compensation**

The statute directs that a guardian of property is compensated as a trustee of a trust. The allowance of a commission is expressly provided for and guided by ET § 13-218(a), which sets forth the compensation and reimbursement of expenses.

**Estates and Trusts > Trusts > Trustee > Right to Commission**

Pursuant to ET § 14.5-708, a trustee is entitled to a commission for services in administering a trust with two potential limitations. First, the amount and the source of payment of the statutorily permitted commissions are subject to the provisions of any valid agreement. ET § 14.5-708(a)(1)(ii). Second, under (a)(1)(iii), a court may "increase or diminish commissions for sufficient cause"; alternatively, the court "may allow special commissions or compensation for services of an unusual nature."

**Estates and Trusts > Trusts > Trustee > Right to Commission**

The commissions permitted under ET § 14.5-708(b)-(d) may only be limited by the provisions of a valid agreement or by the court "for sufficient cause."

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property**

Section 14.5-708(d) of the Estates and Trusts Article sets out the commissions for trustees on the sale of real or leasehold property.

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property**

Because a commission on the sale of real or leasehold property is one form of compensation to which a trustee is statutorily entitled, a court may increase or diminish a commission on the sale of real or leasehold property only "for sufficient cause." ET § 14.5-708(a)(1)(iii).

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property**

By its terms, Local Rule BR7 specifies the compensation allowed a trustee or other fiduciary when the sale instrument does not fix the trustee's or other fiduciary's compensation.

**Estates and Trusts > Trusts > Trustee > Right to Commission**

The first step in determining the proper commission for a guardian of the property is to look to agreements between the guardian and the court—including the letters of guardianship—for any provisions limiting the guardian's compensation or defining the court's scope of review. If such agreements do not delineate the rate for commissions or establish the scope of the court's review, we look to the statute and local rule to determine the rates and types of commissions available.

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property**

Under ET § 14.5-708(d)(1), a trustee's commission on the sale of real or leasehold property is payable from the proceeds of the sale at the rate allowed by rule of court or statute.

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property**

A court has discretion to diminish a trustee's commission under ET § 14.5-708 (a)(1)(iii) "for sufficient cause," or as allowed by rule of court or statute. Nothing in the statutory scheme authorizes a trial court to deny a commission because it was "in the best interest of the ward," or because the trustee did not provide "unusual services," or because no "unusual circumstance exist[ed] to allow a special commission outside of that to which the guardian is entitled."

**Estates and Trusts > Trusts > Trustee > Right to Commission > Sale of Real or Leasehold Property> Local Rule BR7**

Reading ET §§ 13-218 (a), 14.5-708, and Local Rule BR7 together and harmonizing their provisions to the greatest extent possible, *see Whiting-Turner Constr. Co. v. Fitzpatrick*, 366 Md. 295, 303 (2001), we hold that a guardian of property is entitled to a commission for the sale of real property approved by the court, and, absent an agreement or petition of an interested person, that commission may not be diminished except in the narrow circumstances articulated ET § 14.5-708(a)(1)(iii) and Rule BR7.

Circuit Court for Prince George's County
Case No. CAE13-06687

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1084

September Term, 2018

_____

IN THE MATTER OF GERALD S. DORY

_____

Leahy,
Shaw Geter,
Gould,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: December 23, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this appeal, we examine the statutory right of a guardian of property to a commission for the sale of real property and the scope of a trial court's authority to deny or alter a guardian's commission.

By order of the Circuit Court for Prince George's County, Terry Sullivan was appointed guardian of the property of Mr. Gerald S. Dory, an elderly widower, who was admitted to Prince George's County Hospital Center in 2013. There, he was diagnosed with dementia and an altered mental state after he was found living in a house in Capitol Heights without electricity, heat, or running water.

Sullivan's authority as guardian was limited by the Letters of Guardianship of Property (the "Letters"), which required her to obtain a court order before selling or otherwise encumbering Mr. Dory's real property. Accordingly, when Mr. Dory's property located at 1520 Monroe Street, N.W., Washington, D.C. 20010 (the "Property") went into foreclosure in 2016, Sullivan filed a petition requesting the court's permission to conduct a private sale. The court authorized Sullivan to list the Property and subsequently ratified the contract of sale at a price above the Property's appraised value. Sullivan then petitioned the court for a commission on the sale pursuant to the rate of commissions authorized under the Seventh Judicial Circuit,[1] Local Rule BR7. On June 25, 2018, the court denied the petition, without a hearing, after determining that the commission was not in Mr. Dory's best interest and that it was wholly inequitable when considering the time and labor expended by Sullivan.

---

[1] Prince George's County Circuit Court is within the Seventh Judicial Circuit.

Sullivan timely noted her appeal from the court's denial of her petition and presents two questions for our review,[2] from which we extract one question that is dispositive: Did the circuit court apply an incorrect legal standard in denying Sullivan a commission on the sale of Mr. Dory's real property?

For the reasons that follow, we hold that the circuit court applied the wrong standard. Accordingly, we remand to the circuit court with instruction to consider Sullivan's entitlement to her commission applying the correct legal standard.

## BACKGROUND

On February 21, 2013, Dimensions Healthcare System ("Dimensions"), doing business as Prince George's Hospital Center, filed a petition seeking the appointment of guardians of the person and property of Gerald S. Dory in the Circuit Court for Prince George's County. As set forth in the petition, Mr. Dory, a widower with two children, had been a patient of Prince George's Hospital Center in Cheverly, Maryland since his admission on January 25, 2013. An Adult Protective Services investigation was ongoing because Mr. Dory had been found in his Capitol Heights home without utilities or running

---

[2] Sullivan's questions presented, as stated in her brief, are as follows:
I.   Whether the circuit court erred when it denied Sullivan's petition for approval of a commission in connection with the sale of Mr. Dory's real property in the absence of evidence that Sullivan acted negligently or in default of her duties as guardian of the property, and where no interested person objected to Sullivan's petition and no unusual circumstances were present.
II.  Alternatively, whether the circuit court applied an improper legal standard—namely, whether awarding a commission was in the best interest of the ward—and therefore abused any discretion it had to reduce the amount of the commission to which Sullivan was entitled.

water. Physician's certificates attached to the petition indicated that Mr. Dory, then 80 years of age, suffered from dementia and was unable to manage his property and affairs. The petition stated that Mr. Dory was a disabled person as defined within the Maryland Code (1974, 2017 Repl. Vol.), Estates and Trusts Article ("ET"), §§ 13-201(c) and 13-705(b),[3] and requested that the court appoint (1) a Guardian of the Person of Mr. Dory, (2) a Guardian of the Property of Mr. Dory, and (3) an attorney to represent Mr. Dory. Along with the petition, Dimensions filed a motion requesting an expedited hearing on the basis that Mr. Dory was ready to be discharged from the hospital but unable to consent to discharge and placement.

A hearing for the appointment of temporary guardians and counsel for Mr. Dory took place in the circuit court on March 5, 2013. The court, on March 7, 2013, entered orders: (1) appointing Theresa Grant, Director for the Prince George's County Office of Aging, as temporary guardian of the person of Mr. Dory;[4] (2) appointing Sullivan as temporary guardian of the property of Mr. Dory; and (3) appointing Shelton Skolnick to represent Mr. Dory in the guardianship proceedings. That same day, Mr. Dory was moved to Cherry Lane Nursing Center in Laurel and became a resident there.

---

[3] Throughout this opinion, we cite to the version of the Estates and Trust Article in effect at the time Sullivan filed her petition for a commission in 2017. The new version of the Estates and Trusts Article took effect on October 1, 2019; the Article was amended without substantive change as part of a code revision from the 2019 Legislative Session. 2019 Md. Laws, ch. 197 (S.B. 398).

[4] Mr. Dory executed a Power of Attorney naming his daughter, Deborah Dory, as his Attorney-in-Fact on March 15, 2006. The court's order appointing Ms. Grant temporary guardian of the person of Mr. Dory superseded the Power of Attorney.

A full guardianship hearing was held on May 17, 2013. Mr. Skolnick represented Mr. Dory. The court found that Mr. Dory was disabled and unable to care for his person and property, and that guardianship was appropriate because "no less restrictive form of intervention [was] available consistent with [Mr. Dory's] welfare and safety." The court appointed Ms. Grant as guardian of the person of Mr. Dory and Sullivan as guardian of the property of Mr. Dory. The Letters of Guardianship of Property, entered on May 21, 2013, required Sullivan to seek the court's permission to sell any real property or pay any commissions or attorney's fees. The Letters ordered:

> [T]hat Terry K. Sullivan, Esq. be and hereby is appointed guardian of the property of GERALD S. DORY, with all the rights, duties, and powers as set forth in Estates and Trusts Article, Section 13, Subtitle 2, of the Annotated Code of Maryland, EXCEPT:
> (1) The guardian may not sell, invest in, mortgage or otherwise encumber any real property without further order of this Court;
> (2) All investments shall be federal insured investments, unless otherwise ordered by the Court; and
> (3) The guardian may not pay commissions or attorney's fees without order of court[.]

On November 14, 2016, Sullivan filed a petition requesting permission to sell real property owned by Mr. Dory located at 1520 Monroe Street, N.W., Washington, D.C. 20010. Sullivan noted that the Property was in foreclosure after the D.C. Superior Court entered an order granting a default judgment and decree of sale against Mr. Dory.[5] In

---

[5] Mr. Dory, by Deborah Dory as his Attorney-in-Fact, executed a Note and Deed of Trust in connection with the purchase of the Property in 2006. One West Bank N.A. filed a complaint for foreclosure against Mr. Dory on January 29, 2015, alleging that Mr. Dory defaulted under the terms of the Note and Deed of Trust "by no longer occupying the Property as his primary residence." The D.C. Superior Court, on October 20, 2016, entered a default judgment against Mr. Dory and ordered foreclosure and sale of the Property. The Superior Court noted that Sullivan was timely served with the complaint and summons yet

4

further support of the petition to sell the Property through a private sale, Sullivan indicated: (a) Mr. Dory's "medical condition [was] anticipated to be life long and require[] care in a long term care facility[;]"(b) the Property was "vacant and in poor condition[;]" and (c) Mr. Dory "lack[ed] sufficient monthly income to adequately maintain the [P]roperty . . . and meet his personal and medical needs." Sullivan had already contacted a licensed realtor and attached to the petition a proposed listing agreement that included an initial listing price of $700,000.[6]

The court entered an order on December 12, 2016, authorizing Sullivan to list the Property for sale for at least the appraised value and instructing Sullivan to present to the court for ratification any contract that she intended to accept.

Sullivan presented an appraisal of the Property and an offer from Dilan Investment LLC ("Purchaser") to the court for ratification on January 25, 2017. Though the Property was appraised at $575,000, the sales price in the offer from the Purchaser had a cap of $706,100. The court entered an order ratifying the contract of sale between the Purchaser and Sullivan (as Guardian of the Property of Mr. Dory), finding that the sale price was "fair and equitable" based on the appraisal. As a result of the sale, the guardianship estate satisfied the outstanding mortgage on the Property and realized net proceeds of

---

failed to respond, and that a default was entered against Mr. Dory but there was no response. Further, the judgment stated that Mr. Dory, or Sullivan as his guardian of the property, "failed to appear at hearings held on July 24 and November 20, 2015 and March 18 and June 24, 2016."

[6] Sullivan had obtained consent from Mr. Dory's granddaughter, Regina Dory, and his daughter, Deborah Dory, to engage a realtor to sell the Property.

$180,510.87. Sullivan resolved the pending foreclosure action, which was dismissed by the lender on May 23, 2017.

On July 5, 2017, Sullivan filed a "Petition for Approval of Commissions on Sale of Real Property." Citing to ET § 13-218, Sullivan averred "a guardian of the property is entitled to the same compensation as the trustee of a trust." As required by ET § 14.5-708(d), which governs commissions available to trustees, Sullivan calculated the total commission—amounting to $9,331—pursuant to the rate of commissions specified in Local Rule BR7.[7] Sullivan sent notice of the petition to all interested parties, including Theresa Grant, guardian of the person of Mr. Dory.

In her memorandum and order denying Sullivan's petition, the circuit court judge relied on *Sokol v. Nattans*, 26 Md. App. 65 (1975), for the proposition that "a trustee does not automatically get the commissions and allowances authorized by statutes." The court opined that "[t]he statutes and the local rule make it clear that commissions are not automatic and that the Court has discretion in awarding them." The court interpreted *Bunn v. Kuta*, 109 Md. App. 53 (1996), to support the trial court's "discretion to diminish commissions for just cause" "notwithstanding the language in [Local Rule] BR7 limiting

---

[7] The commission rate delineated in Local Rule BR7 is "(i) 10% on the first $3,000.00; (ii) 5% on the next $50,000.00; and (iii) 1% on the remainder." Accordingly, Sullivan calculated her commission on the $706,100.00 proceeds of the sale to be:

| *10% on the first $3,000.00* | 10% * $3,000.00 | = $300.00 |
|---|---|---|
| *5% on the next $50,000.00* | 5% * $50,000.00 | = $2,500.00 |
| *1% on the remainder* | 1% * $653,100.00 | = $6,531.00 |
| *Total* | | = $9,331.00 |

6

the Court's authority to diminish commissions in the event of neglect or other fault on the part of the trustee or other fiduciary[.]"

The court looked "to the totality of the circumstances" and observed that Sullivan enlisted the services of a realtor who already received $21,183 in commissions for selling the Property. From the court's perspective, Sullivan "[sought] a commission simply by virtue that she is the guardian." According to the court, Sullivan did not earn any "special commission" as she "did not provide unusual services nor d[id] any unusual circumstance exist"; rather, in the court's view, the sale of the Property was "consistent with the general duties and responsibilities of a guardian." The court noted its role as "the ultimate guardian of the ward," and found that "[a]ll of [Mr. Dory's] income, with the exception of his personal needs allowance[,] is required for his care." Consequently, the court found that the "commission requested based on the sale of the ward's real property is not in the best interest of the ward and is wholly inequitable when considering the time and labor expended by the guardian." Sullivan timely noted an appeal.

## DISCUSSION

Sullivan argues, "[a]s a threshold matter," that "the Circuit Court misconstrued applicable Maryland law regarding the compensation afforded to court-appointed guardians in connection with the sale of real property." Sullivan contends that, reading together and harmonizing ET §§ 13-218(a), 14.5-708(a)(1)(i), 14.5-708(d)(1), and Local Rule BR7, a guardian is entitled to a commission "absent certain, narrow exceptions" and that the court must approve a commission "as a matter of law" where no exception applies. Because the circuit court did not find that an exception applied in this case, Sullivan asserts,

7

the circuit court "erred as a matter of law by denying the Guardian's petition for a commission." Sullivan submits that the judge was under the mistaken view that she had the discretion to deny the commission, as evidenced by her ruling that "the commission requested . . . [was] not in the best interest of the ward" and that the commission was "wholly inequitable when considering the time and labor expended by the guardian." Sullivan adds that, even if the court had found that an exception applied and was then in a position to exercise her discretion to deviate from the statutory commission, the concerns articulated by the judge were not relevant, and "any reliance on a 'best interests' analysis to deny compensation would amount to a clear abuse of discretion."

**Standard of Review**

The central question in this appeal concerns the trial court's authority to review and determine the commission that a guardian of the property may receive for the sale of real property under ET §§ 13-218(a), 14.5-708(a)(1)(i), and 14.5-708(d)(1), and Local Rule BR7. We accord no deference to the trial court's interpretations of statutes and rules. *Davis v. Slater*, 383 Md. 599, 604 (2004). Although we yield to a trial court's factual determinations, we do not defer to the court's legal determinations. *100 Harborview Drive Condo. Council of Unit Owners v. Clark*, 224 Md. App. 13, 38 (2015).

It is "well established that '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature.'" *Espina v. Prince George's Cty.*, 215 Md. App. 611, 630 (2013) (quoting *Lockshin v. Semsker*, 412 Md. 257, 274 (2010), *aff'd sub nom. Espina v. Jackson*, 442 Md. 311 (2015). In construing statutes and rules of procedure,

8

> [W]e begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction[.]  We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.  Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.

*Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580-81 (2014) (citation omitted).

Where the language of the statute or rule is ambiguous, "we usually look beyond the statutory language to the statute's legislative history, prior case law, the statutory purpose, and the statutory structure" to help discern the General Assembly's intent.  *Spangler v. McQuitty*, 449 Md. 33, 49-50 (2016) (citation omitted)*; see also David A. v. Karen S.*, 242 Md. App. 1, 32 (2019), *cert. denied*, 446 Md. 219 (2019) (finding the statutory language to be ambiguous and, therefore, "turn[ing] our attention to our other tools of statutory analysis").  We "seek to harmonize statutes on the same subject," *Brendoff v. State*, 242 Md. App. 90, 109 (2019), because we presume that the General Assembly intended to create "a consistent and harmonious body of law." *Battley v. Banks*, 177 Md. App. 638, 650 (2007) (citation omitted).

# I.

# Guardianship Compensation

## A. Statutory Scheme

Title 13, Subtitle 2 of the Estates and Trusts Article addresses various aspects of guardianship of property, including the appointment of a guardian,[8] the standard of care and skill required of a guardian,[9] the court's authority to impose limitations on a guardian's authority, as well as the allowance of a guardian's commissions. The activities of a guardian "are overseen by the circuit court, which has 'exclusive jurisdiction over

---

[8] Section 13-201 provides that "[u]pon petition, and after any notice or hearing prescribed by law or the Maryland Rules, the court may appoint a guardian of the property of … a disabled person." The court must make two findings before appointing a guardian for a disabled person:

> (1) The person is unable to manage his property and affairs effectively because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, detention by a foreign power, or disappearance; and
> (2) The person has or may be entitled to property or benefits which require proper management.

ET § 13-201(c). Any individual, trust company, or other corporation authorized by law to serve as a trustee is eligible to serve as a guardian, though entitlement to appointment is subject to certain priorities. ET §§ 13-206 and 13-207.

[9] "The appointment and qualification of a guardian vests in the guardian title to all property of the . . . protected person that is held at the time of appointment or acquired later." ET § 13-206(c)(1). A guardian must utilize his or her powers "to perform the services, exercise his [or her] discretion, and discharge his [or her] duties for the *best interest* of the . . . disabled person or [the disabled person's] dependents." ET § 13-206(c)(1) (emphasis added). Once appointed, the standard of care and skill required of a guardian is that "of a man of ordinary prudence dealing with his own property." ET § 13-212. When necessary, a guardian "may petition the appointing court for permission to act in any matter relating to the administration of the estate." ET § 13-210(b).

protective proceedings for disabled persons,' under ET § 13-105(b)." *Battley*, 177 Md.

App. at 648. Correspondingly, as the Court stated in *Kicherer v. Kicherer*, the court is "in

reality" the ultimate guardian of the ward:

> a court of equity assumes jurisdiction in guardianship matters to protect those who, because of illness or other disability, are unable to care for themselves. In reality[,] the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility.

285 Md. 114, 118 (1979). The scope of a court's discretion and authority under the statute

is guided by the statute's plain language. *See Barrett v. Barrett*, 240 Md. App. 581, 591

(2019) (noting that trial courts do not have discretion to apply incorrect legal standards).

The statutory scheme provides that: (1) a guardian is compensated as a trustee under

ET § 13-218(a); (2) a guardian's commission is further structured according to the specific

instructions and limitations set out in ET § 14.5-708; and (3) commissions for the sale of

real property are compensated at the rate allowed by rule of court or statute.

### 1. Compensation under the Guardian Statute

The allowance of a commission is expressly provided for and guided by ET § 13-

218(a), which sets forth the compensation and reimbursement of expenses. The statute

directs that a guardian of property is compensated as a trustee of a trust:

> Except in unusual circumstances and as provided in subsection (b) of this section,[10] **the guardian is entitled to the same compensation** and reimbursement for actual and necessary expenses **as the trustee of a trust**.

---

[10] Subsection (b) applies when a person is appointed as the guardian of a disabled person who is a recipient of long-term care services and supports under the Maryland Medical Assistance Program and whose income is subject to § 15-122.3 of the Health-General Article. There is no indication in the record that subsection (b) applies to the guardianship of Mr. Dory.

> **No petition or hearing is required to entitle the guardian to compensation and expenses. Upon the petition of any interested person and upon a finding by the court that unusual circumstances exist**, **the court may increase or decrease compensation**.

ET § 13-218(a) (emphasis added). Although no petition or hearing is required to entitle the guardian to compensation and expenses, we see nothing to prevent a court from holding a hearing, should a court deem one necessary.[11]

### 2. Trustee's Right to Commission

As directed by ET § 13-218(a), we examine next the statute that establishes a trustee's right to commissions for services in administration of a trust: ET § 14.5-708.[12] Subsection (a)(1) provides:

> (i) A testamentary trustee and trustee of any other trust whose duties comprise the collection and distribution of income from property held under a trust agreement or the preservation and distribution of the property **are entitled to commissions provided for in this section for services in administering the trusts**.
> (ii) The **amount and source** of payment of commissions are **subject to** the provisions of **any valid agreement**.
> (iii) A **court** having jurisdiction over the administration of the trust **may increase or diminish commissions for sufficient cause** or may allow special commissions or compensation for services of an unusual nature.

ET § 14.5-708(a) (emphasis added). The statute sets out instructions for determining: (1) income commissions; (2) commissions on the value of the corpus or principal; (3)

---

[11] Sullivan did not request a hearing on her petition for a commission on the sale of real property and did not raise any questions pertaining to a hearing for our review.

[12] The reimbursement of expenses for trustees is governed by ET § 14.5-709.

*commissions for selling real or leasehold property*; and (4) allowances on the final distribution of a trust.  ET § 14.5-708(b)-(e).

Pursuant to ET § 14.5-708, a trustee is entitled to a commission for services in administering a trust with two potential limitations.  First, the amount and the source of payment of the statutorily permitted commissions are subject to the provisions of any valid agreement.  ET § 14.5-708(a)(1)(ii).  Second, under (a)(1)(iii), a court may "increase or diminish *commissions* for *sufficient cause*"; alternatively, the court "may allow *special commissions or compensation* for *services of an unusual nature*."  (Emphasis added).  We read the separate standards under (a)(1)(iii) to mean that the General Assembly intended there to be two commissions: (1) those provided for in § 14.5-708, and (2) special commissions and compensation for "services of an unusual nature," as allowed by the court.  Thus, the commissions permitted under ET § 14.5-708(b)-(d) may only be limited by the provisions of a valid agreement or by the court "for sufficient cause."

### 3.  Commissions for Trustees on the Sale of Real or Leasehold Property

Section 14.5-708(d) of the Estates and Trusts Article sets out the commissions for trustees on the sale of real or leasehold property:

> (1) For selling real or leasehold property, a commission on the proceeds of the sale is payable at the **rate allowed by rule of court or statute** to trustees appointed to make sales under decrees or orders of the circuit court for the county where the real or leasehold property is situated, or **if the property is located outside Maryland**, for selling similar property in the **county where the trust is being administered**.
> (2) The commission described in paragraph (1) of this subsection is payable from the proceeds of the sale when collected.

13

ET § 14.5-708(d) (emphasis added).  As we noted above, because a commission on the sale of real or leasehold property is one form of compensation to which a trustee is statutorily entitled, a court may increase or diminish a commission on the sale of real or leasehold property only "for sufficient cause."  ET § 14.5-708(a)(1)(iii).

In this case, because the Property sold by Sullivan was located outside Maryland, any commission on the sale proceeds is payable at the rate allowed by the local rule applicable in Prince George's County, where the guardianship of Mr. Dory's property was being administered.  The applicable rule for Prince George's County, which falls within the Seventh Judicial Circuit of Maryland, is Local Rule BR7.[13]  Local Rule BR7 provides for the compensation of trustees and other fiduciaries:

> a. *Generally*
>    In all sales of real, leasehold and tangible personal property made pursuant to an order of Court or subject to ratification by the Court, the compensation, unless fixed by the instrument pursuant to which the sale is conducted, allowed to the trustee or other fiduciary shall be as follows: (i) 10% on the first $3,000.00; (ii) 5% on the next $50,000.00; and (iii) 1% on the remainder.
> b. *Increase or Decrease in Allowance by Court*
>    The above allowances may be increased by an order of the Court in a situation of extraordinary difficulty and may in like manner be diminished in the event of negligence, or other default on the part of the trustee or other fiduciary.

---

[13] Maryland Rule 1-102 provides that, "[u]nless inconsistent with [the] rules, circuit and local rules regulating (1) court libraries, (2) memorial proceedings, (3) auditors, (4) *compensation of trustees in judicial sales*, and (5) appointment of bail bond commissioners and licensing and regulation of bail bondsmen, are not repealed."  (Emphasis added).  A judicial sale is one that is subject to ratification by the court. *See Fowler v. Fitzgerald*, 82 Md. App. 166, 175 (1990); *Bunn*, 109 Md. App. at 67.  Because Local Rule BR7 provides for the compensation of trustees in all sales "made pursuant to an order of Court or subject to ratification by the Court" it regulates judicial sales and falls within category (4) of Rule 1-102.  In the absence of inconsistency with the Maryland Rules, Local Rule BR7 remains in effect for the Seventh Judicial Circuit.

14

(Emphasis added). By its terms, Local Rule BR7 specifies the compensation allowed a trustee or other fiduciary when the sale instrument does not fix the trustee's or other fiduciary's compensation. The Rule delineates two bases for the court to exercise discretion and alter the default commission rate. First, the allowances "*may* be *increased* by an order of the Court in a situation of *extraordinary difficulty*." (Emphasis added). Second, the allowances "*may* in like manner be *diminished* in the event of *negligence, or other default* on the part of the trustee or other fiduciary." (Emphasis added).

In sum, we distill the statutory scheme governing the entitlement of a guardian of property to a commission on the sale of real property:

- A guardian of the property is entitled to the same compensation and reimbursement for actual and necessary expenses as the trustee of a trust. ET § 13-218(a).

- No petition or hearing is required to entitle the guardian to compensation and expenses. ET § 13-218(a).

- The amount of commission to which the guardian is entitled on the proceeds of the sale is subject to:

  1. The provisions of any valid agreement, ET § 14.5-708(a); or

  2. ET § 14.5-708(d), which states that a commission is payable at the rate allowed by rule of court or statute—in this case, Local Rule BR7.

- A court may only alter a guardian's commission in the manner articulated in the statutory scheme:

  1. Increase or decrease the compensation upon the petition of any interested person *and* upon a finding by the court that unusual circumstances exist, ET § 13-218(a);

  2. Increase or diminish the commission for sufficient cause, ET § 14.5-708(a)(1)(iii);

  3. Increase the allowance in a situation of extraordinary difficulty, Local Rule BR7; or

4. Diminish the allowance in the event of negligence, or other default on the part of the trustee or other fiduciary.  Local Rule BR7.

Clearly, the statutory scheme employs different terms authorizing the trial court to alter a commission for the sale of real property under ET § 14.5-708(a)(1)(iii) and under Local Rule BR7.  Consequently, our focus shifts to the history and purpose of the statutes and the local rule so that we may better discern the intent of the General Assembly and the Seventh Judicial Circuit.  *See Spangler*, 449 Md. at 49-50.  Fortunately, much of this investigation was already undertaken in several cases that we review next.

## B.  Appellate Opinions

None of the following opinions controls our decision in this case, but each offers relevant legislative history and direction on construction of the statutory scheme we are examining.

In *Sokol v. Nattans*, this Court set out the history of trustee compensation.  26 Md. App. 65, 82 (1975).  As our predecessors explained, "[p]rior to 1939 there was no statutory provision for compensation to conventional trustees."  *Id.* at 71.  The ordinary rule, as defined by the Court of Appeals in *Abell v. Brady*, was a 5 percent commission on the trust income. *Id.* (citing *Abell v. Brady*, 79 Md. 94, 98-99 (1894)).  When the instrument creating the trust provided for a certain rate of compensation, however, the rate would in general be allowed, and the trustee would be entitled only to that amount.  *Sokol*, 26 Md. App. at 74-75.

The *Sokol* Court reviewed an earlier Court of Appeals case that summarized the

rules—prior to the enactment of any statutory compensation scheme—that "should be

followed and enforced" except in "extraordinary" cases:

> (1) . . . **compensation should be allowed to a conventional trustee** as a reasonable indemnity for services rendered by him in the discharge of his duties, **although no provision for such compensation is made in the instrument creating the trust**.
>
> (2) **(W)here the compensation of a conventional trustee is fixed in the instrument** making the appointment, the same will ordinarily and generally be **allowed**.
>
> (3) (T)he allowance of commissions to trustees, when the trust is administered under the control and supervision of the court, is largely within the discretion and judgment of the court, and is to be determined from all the circumstances of the particular case, taking into consideration the amount of labor required, the amount of risk incurred, the character of the duty to be performed, the time and attention necessary to be bestowed upon it, and the amount of the estate which is the subject of the trust; in other words, the compensation is upon the basis of a quantum meruit, and is to be such an amount as will fairly and justly compensate the trustee for the services rendered . . . **Where rules of court or established practice fix the rate of commission, (as would be the case where compensation to be allowed is provided in the instrument creating the trust), they should be followed and enforced**; but, **even in such cases**, keeping in mind that the character, quality, and extent of the service is what is being allowed for, **the chancellor in extraordinary cases has the authority to diminish or increase the usual allowance.**

*Id.* at 76-77 (emphasis added) (quotations omitted) (citing *Schloss v. Rives*, 162 Md. 346,

350-52 (1932)). The first statute covering compensation for trustees was enacted in 1939

and became, after amendments and revisions, ET § 14-103, the predecessor to § 14.5-708.[14]

*Sokol*, 26 Md. App. at 78. The *Sokol* court noted:

---

[14] During the 2014 Legislative Session, the Maryland General Assembly repealed §§ 14-101 through 14-116 of the Estates and Trusts Article and added §§ 14.5-101 through 14.5-1006 under the new title "Title 14.5 Maryland Trust Act." Maryland Trust Act, 2014 Md. Laws, ch. 585 (H.B. 83).

It was [] expressly stated, until the stylistic revision in 1974, that the statutory commissions were in lieu of such commissions as have been heretofore allowed for such services by custom or by law. It was made manifest in the original statute and preserved in the amending statutes from time to time that the allowance of compensation as authorized was in the sound discretion of the court. The commissions were subject to be increased or diminished for sufficient cause by any Court having jurisdiction over the administration of such trust[.]

*Id.* at 78. (quotations omitted).

Turning to the matter on appeal, this Court in *Sokol* considered two issues: first, whether the trustees were entitled to a statutory termination commission upon final termination of the corpus and, second, whether the trustees should be allowed a counsel fee out of the income of the trust estate incurred in connection with an unsuccessful claim against trust assets. *Id.* at 66. Regarding the first issue, this Court determined that the will was a valid agreement binding on the trustees, and, therefore, the will was controlling. *Id.* at 85 (citing ET § 14-103, the predecessor to ET § 14.5-708). Because the will accounted for the trustees' compensation, the "compensation of the trustees was without the statute as subject to the 'valid agreement.'" *Sokol*, 26 Md. App. at 86.

Concerning the second issue, the Court determined, based on the record before it, that there was "no basis for [the Court] to determine whether the chancellor erred in concluding that it was impossible to accurately separate the work which pertained solely to the commission granted from the work which pertained to the commission which was denied, and in finding little or no justification for making an arbitrary decision." *Id.* at 92-93. Because there was nothing in the record to allow the chancellor to apportion fees

18

between the commission granted and the commission denied, the Court held that it could

not find a "clear and substantial error" in the allowance of the fee.  *Id.* at 93.

In *Bunn v. Kuta*, we analyzed the relationship between the Estates and Trusts Article

and a local rule.  109 Md. App. 53, 68-69 (1996).  We explained that "a court has general

power to review the amount of compensation to trustees or persons conducting a sale

subject to ratification by a court," and that courts generally defer to the terms of an

instrument setting compensation, absent extraordinary circumstances.  *Id.* at 68.  Then, we

discussed the connection between the "sufficient cause" test contained in ET § 14.5-

708(a)(1)(iii) and the standards for altering a trustee's commission set out in Local Rule

BR7:

> The test for deviation from the terms of a written instrument, under the Court of Appeals' cases and prior to statutory enactment, was one of extraordinary circumstances; **the test under the statute is one of sufficient cause; and the test under the local rule is extraordinary difficulty or negligence of the trustee**.  Based on the prior decisions of the Court of Appeals and this court, including *Sokol*, we do not perceive a substantial practical difference, even though different language is employed, between review pursuant to general power or pursuant to statute.  The cases dealing with trusts, mortgages, and deeds of trusts before enactment of the statutes deferred to the provisions of the relevant instruments except in extraordinary circumstances.  That concept has not been changed by the Legislature.  To the extent the Local Rule [BR7] employs a more onerous standard, it is invalid; the circuit court should consider the totality of the circumstances in conducting its review.

*Id.* at 68-69 (emphasis added).  We instructed that "even though different language is

employed" by the statute and the local rule, a circuit court "invoking [its] power to

supervise the amount of the compensation" should examine the totality of the

circumstances and *articulate* any findings of "sufficient cause" to alter the compensation. *See id.* at 68-69.

Finally, in *Baltrotsky v. Kugler*, the Court of Appeals more recently examined a "five percent trustee commission, contracted for in the deed of trust[,]" and held that "[n]othing in the facts of [the] case amount[ed] to 'sufficient cause' to lower, much less eliminate, [the trustee's] commission for executing his duties." 395 Md. 468, 481-83 (2006). In that case, Baltrotsky owned three properties, all subject to a single deed of trust held by the lender and beneficiary of the trust. *Id.* at 471. After Kugler, the trustee, held a successful foreclosure sale, Baltrotsky "instituted *pro se* litigation in an effort to void the sale and preserve his ownership of the properties." *Id.* After the eventual settlement on the properties, Kugler submitted his proposed distribution of proceeds, which included his "trustee commission of five percent of the gross foreclosure sale." *Id.* at 473. Baltrotsky challenged the commission, arguing that it constituted a penalty or unenforceable liquidated damages clause. *Id.* at 481. The Court of Appeals rejected Baltrotsky's argument and held that the circuit court did not abuse its discretion in ratifying the report containing the commission. *Id.* at 481, 483. The Court noted that a court's inherent power to review trustee compensation includes the ability to lower *and* increase commissions. *Id.* at 483. Considering Baltrotsky's "persistent efforts" to frustrate Kugler's execution of his duties, the Court explained that nothing in the facts amounted to "sufficient cause" to lower the commissions Kugler contracted for in the deed of trust. *Id.* at 483.

In the foregoing cases, the Estates and Trusts Article was analyzed in the context of challenges to various trustees' commissions. The only appellate opinion that discusses the

right of a guardian of property to any commission under the Estates and Trusts Article, *Battley v. Banks*, has limited application because that case did not address commissions on the sale of real property. 177 Md. App. at 642. We noted in that case, however, that for her efforts, "the guardian is *entitled*, under ET § 13-218, 'to the same compensation and reimbursement for actual and necessary expenses as the trustee of a trust.'" *Id.* at 648 (emphasis added).

## II.

## Analysis

Applying the relevant statutes, Local Rule BR7, and the foregoing decisional law to the circumstances presented in this case, we conclude that the trial court erred in its interpretation and application of the law. Reading ET §§ 13-218 (a), 14.5-708, and Local Rule BR7 together and harmonizing their provisions to the greatest extent possible, *see Whiting-Turner Constr. Co. v. Fitzpatrick*, 366 Md. 295, 303 (2001), we hold that a guardian of property is entitled to a commission for the sale of real property approved by the court, and, absent an agreement or petition of an interested person, that commission may not be diminished except in the narrow circumstances articulated ET § 14.5-708(a)(1)(iii) and Rule BR7. Because the term "sufficient cause" is not defined in the Estates and Trusts Article, we construe the phrase in conjunction with Local Rule BR7, which only permits a reduction in the commission where there is "negligence or other default on the part of the [guardian]." *See Bunn*, 109 Md. App. at 68 ("[W]e do not perceive a substantial practical difference, even though different language is employed[.]").

Our review is guided by the principle that the court "[i]n reality" is the guardian of

21

the ward, *Kicherer*, 285 Md. at 118, and the activities of a guardian "are overseen by the circuit court, which has 'exclusive jurisdiction over protective proceedings for disabled persons,' under ET § 13-105(b)." *Battley*, 177 Md. App. at 648. Accordingly, courts have the inherent power "to review compensation and expenses paid in connection with forced sales including judicial sales and sales requiring ratification by a court." *Bunn*, 109 Md. App. at 60-61.

As noted above, ET § 13-218(a) provides that a guardian is entitled to the same compensation as a trustee, and, therefore, ET § 14.5-708 determines Sullivan's entitlement to a commission for the sale of Mr. Dory's Property. We note that a commission for the sale of the Property is not, as the court labeled it, a "special commission outside of that to which the guardian is entitled."[15] Rather, according to the plain language of ET § 14.5-708 subsections (a)(1)(i) and (d), trustees are entitled to a commission on the proceeds of the sale of real or leasehold property. The designated rates are subject (1) "to the provisions of any valid agreement" and (2) to being increased or diminished "for sufficient cause" by a court with jurisdiction over the administration of the guardianship estate. ET § 14.5-708

---

[15] No interested person filed a petition with the court in response to Sullivan's petition for a commission on the sale of the Property. Consequently, the provision in ET § 13-218(a) authorizing the court to increase or decrease compensation upon the petition of an interested person and a finding of "unusual circumstances" also does not apply in this case. All interested persons had notice of the petition because Sullivan mailed a copy to Deborah, Jerome, and Regina Dory, as Mr. Dory's heirs; Ms. Grant, as the guardian of the person of Mr. Dory; and the Social Security Administration, as a governmental agency paying benefits to Mr. Dory. Moreover, the judge stated in her memorandum opinion that "no unusual circumstance exist[ed]" and that the "sale of [Mr. Dory's] real property in a guardianship case [was] consistent with the general duties and responsibilities of a guardian."

(a)(1)(ii) and (iii).

The first step in determining the proper commission for a guardian of the property is, therefore, to look to agreements between the guardian and the court—including the letters of guardianship—for any provisions limiting the guardian's compensation or defining the court's scope of review. If such agreements do not delineate the rate for commissions or establish the scope of the court's review, we look to the statute and local rule to determine the rates and types of commissions available. Here, the Letters impose various limitations on the powers of Sullivan as guardian of the property. *See* ET § 13-215(a). The Letters specify that "[t]he guardian may not pay commissions or attorney's fees without order of court[.]" Therefore, Sullivan's argument that "court approval is not required" for a commission on the sale of Mr. Dory's Property, based on ET § 13-215(a), is unavailing in this case because of the restriction contained in the Letters. Sullivan complied, however, with its terms by submitting a petition requesting the commission. *See* ET § 13-210(b). Still, the Letters did not set the rate of Sullivan's compensation, limit the commissions available to her, or establish the court's scope of review.

Under ET § 14.5-708(d)(1), Sullivan's commission on the sale of Mr. Dory's Property was payable from the proceeds of the sale at the rate set by the local rule, in this case, Local Rule BR7. The court had discretion to diminish Sullivan's commission under ET § 14.5-708 (a)(1)(iii) "for sufficient cause," or under Local Rule BR7 in the "event of negligence or other default" on the part of Sullivan. Nothing in the applicable statutory scheme authorized the trial court to deny Sullivan a commission because it was "in the best interest of the ward," or because Sullivan did not provide "unusual services," or because

23

no "unusual circumstance exist[ed] to allow a special commission outside of that to which the guardian is entitled."

The court's memorandum opinion and order does not explain why there was "sufficient cause" to not only diminish, but totally deny the statutory commission. *See Baltrotsky*, 395 Md. at 483 ("Nothing in the facts of [the] case amount[ed] to 'sufficient cause' to lower, much less eliminate, [the trustee's] commission for executing his duties."). Nor does the opinion contain any finding of negligence or other default on Sullivan's part. The opinion states that the commission requested by Sullivan is "wholly inequitable when considering the time and labor expended" but does not include any findings to support this conclusion.

The court's analysis of whether a commission was in Mr. Dory's best interest was not relevant to the issue of "sufficient cause" under ET § 14.5-708 (a)(1)(iii). Guardians have a fiduciary duty to discharge their responsibilities in the best interest of the ward. ET § 13-206(c). But in this case, the court gave Sullivan permission to sell the Property and ratified the sale. The court already determined that the sale was in the best interests of Mr. Dory. The court erred by engaging in a subsequent determination of whether the commission was in Mr. Dory's best interests, as Sullivan was entitled to the commission in connection with her duties, in the absence of a finding of negligence or other default.

We conclude that the trial court erred in its interpretation of the applicable law and failed to exercise its discretion according to the correct legal standard. As we explained recently, a trial court's "discretion is 'always tempered by the requirement that the court correctly apply the law applicable to the case.' Indeed, . . . trial courts do not have

24

discretion to apply incorrect legal standards and [] 'a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion.'" *Barrett*, 240 Md. App. at 591 (citations omitted).

We reverse and remand the judgment of the trial court with directions to enter an order applying the correct standard. The court may decide to approve Sullivan's commission in the default amount set by Local Rule BR7. Alternatively, if the court determines there may be "sufficient cause" to deviate from the commission rate in Local Rule BR7, the court may hold further proceedings to examine the totality of the circumstances and articulate, in a subsequent memorandum and order, any findings of negligence or other default by Sullivan such that there exists "sufficient cause" to alter the commission. *Bunn,* 109 Md. App. at 68-69.

**JUDGMENT REVERSED. CASE IS REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS AND TO ENTER AN ORDER CONSISTENT WITH THIS OPINION. COSTS WAIVED.**