*In the Matter of the Trust Under Item Ten of the Last Will and Testament of Dorothea K. Lanier, Deceased*, No. 737, Sept. Term 2023. Opinion by Tang, J.

**APPEAL AND ERROR – DECISIONS REVIEWABLE – FINALITY OF DETERMINATION – INTERLOCUTORY AND IMMEDIATE DECISIONS – AFFECTING COLLATERAL MATTERS AND PROCEEDINGS**

An order denying a trustee's fee petition in the context of the administration of a trust falls within the collateral order doctrine and thus was appealable, where no other proceeding was pending in the circuit court. The denial order conclusively determined the disputed question of whether the trustee was entitled to his attorneys' fees, it resolved an important issue independent of the administration of the trust, and the order would have been effectively unreviewable if the appeal had to await the termination of the trust.

**TRUSTS – MANAGEMENT AND DISPOSAL OF TRUST PROPERTY – INDIVIDUAL INTEREST IN TRANSACTIONS – IN GENERAL**

Under the Maryland Trust Act, a trustee shall administer the trust solely in the interests of the beneficiaries. Md. Code, Est. & Trusts ("ET") § 14.5-802(a) (1974, 2017 Repl. Vol.). ET § 14.5-802 outlines different types of prohibited divided-loyalty transactions by a trustee involving trust property. If a trustee engages in a self-dealing transaction under subsection (b), the transaction is voidable by the beneficiary affected, except under certain circumstances. Such a transaction is irrebuttably presumed to be affected by a conflict between personal and fiduciary interests.

If the transaction is not self-dealing but is entered into with persons with close business or personal ties to the trustee under subsection (c), it is presumptively voidable. The presumption can be rebutted if the trustee establishes that a conflict between personal and fiduciary interests did not affect the transaction.

Subsection (f), however, provides that certain divided-loyalty transactions are allowed if fair to the beneficiaries. One exception is the payment of "reasonable compensation" to the trustee. ET § 14.5-802(f)(2).

**TRUSTS – ACCOUNTING AND COMPENSATION OF TRUSTEE – COMPENSATION – IN GENERAL – ALLOWANCE AND RECOVERY**

The trial court erred in interpreting ET § 14.5-802 to mean that the trustee's self-employment as counsel to perform legal work for the trust presented a conflict of interest that strictly prohibited the trustee from payment of reasonable compensation for such services. Subsection (f)(2) excepts from prohibited divided-loyalty transactions the payment of "reasonable compensation" to a trustee "if fair to the beneficiaries[.]" ET § 14.5-802(f)(2).

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 737

September Term, 2023

_____

IN THE MATTER OF THE TRUST UNDER
ITEM TEN OF THE LAST WILL AND
TESTAMENT OF DOROTHEA K. LANIER,
DECEASED

_____

Reed,
Tang,
Raker, Irma S.
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Tang, J.

_____

Filed: July 31, 2024

*Ripken, J., did not participate in the Court's
decision to designate this opinion for publication
pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal examines whether a trustee, who is also an attorney, is entitled to compensation when they hire themselves as counsel to provide legal services for a trust.

By order of the Circuit Court for Anne Arundel County, Elliot N. Lewis, Esq. ("Lewis") was appointed successor trustee of a trust. Lewis hired himself to perform legal work in connection with the administration of the trust. He later petitioned for his fees to be paid from the trust funds. The court denied the fee petition after concluding that the self-hiring posed a conflict of interest under the Maryland Trust Act, Md. Code, Est. & Trusts ("ET") § 14.5-802 (1974, 2017 Repl. Vol.).

Lewis timely noted an appeal and presents the following question, which we have consolidated and rephrased:[1] Did the circuit court err in denying Lewis's fee petition? For the reasons below, we hold that it did. Accordingly, we reverse and remand to the circuit court with instructions to make findings of fact as to the fair and reasonable compensation for legal services performed by Lewis for the administration of the trust.

---

[1] Lewis phrases the questions presented in his brief as follows:

1. Are the attorneys' fees rendered by and petitioned for by Successor Trustee and the law firm in which he has a contract of employment considered to be ". . . transactions involving investment or management of trust property . . ." so as to lead to the presumption that such services were affected by a conflict of interest between personal and fiduciary interests?

2. Assuming arguendo that there is a presumption of conflict of interest, does such presumption bar payment of attorneys' fees for services rendered that benefited the Trust barring any evidence that such presumed conflict of interest was detrimental to and affected the services rendered by Elliot N. Lewis, Esquire, Elliot N. Lewis, P.A. and Goodman, Meagher & Enoch, LLP in regards to the Dor[o]thea K. Lanier Testamentary Trust?

## BACKGROUND

On October 9, 2002, Dorothea K. Lanier (the "Decedent") died a resident of Florida. Her Last Will and Testament (the "Will") was admitted to probate in Florida in 2003. As part of the Florida probate proceeding, Judith L. Goodwin ("Judith"), the Decedent's daughter, was appointed Personal Representative of the estate. Later, Judith applied for and was appointed as the Foreign Personal Representative of the estate in Anne Arundel County for the ancillary administration of property there.

### Trust

Under "Item Ten" of the Will, the Decedent's residuary estate was left in a trust (the "Trust") and divided into two groups (A and B). Group A consists of two parcels known as 4703 and 4705 Ritchie Highway in Anne Arundel County. Group B consists of the balance of the Decedent's residuary estate.

The Will requires the trustee to pay all net income from Group A assets to the Decedent's three children in the following proportions: Barry W. Lanier ("Barry")–45%; Judith–45%; and James T. Lanier, Jr. ("James")–10%. If any of the children were not living, then their children would receive their share of the net income. The trustee can sell the property and distribute the proceeds at the trustee's discretion if it is in the interest of the living trust beneficiaries.

Group B assets, to the extent there are any, are to be administered in the same manner as Group A assets, except that the income is paid to the Decedent's three children in equal shares if living. Otherwise, it will be paid to the remaining named beneficiaries.

## Duration of Trust

The Will provides that upon the death of the last surviving child, the trustee shall distribute all Group A and Group B assets proportionately to those beneficiaries then entitled. It also provides that if, in the trustee's judgment, the principal and accumulated income of the Trust should be of such fair market value that it would be uneconomical or otherwise inappropriate to continue the Trust, the trustee may, in their absolute discretion, anticipate the termination of the Trust and distribute the remaining principal to the beneficiaries.

## Trustee

Under the Will, the Decedent designated Mercantile-Safe Deposit & Trust Company ("Corporate Trustee") to serve as the trustee of the Trust. The Will outlined the trustee's powers under "Item Sixteen" in paragraphs A through Y. These powers include leasing, selling, and purchasing property; borrowing money; enforcing obligations; and the power to perform other acts necessary or appropriate for the proper administration of the trust.

The trustee also has the power "[t]o employ (and pay reasonable compensation to) agents, attorneys and proxies and to delegate to them such powers, discretionary or otherwise, as the Trustee(s) considers desirable." The trustee is "entitled to reimbursement therefor and for other expenses and charges, to be paid out of principal or income."

The Will states that "any Corporate Successor Trustee(s) shall receive compensation for its services in accordance with the Schedule of Fees as in effect from time to time[,]" but it does not expressly provide for compensation for an individual trustee.

According to the Will, the Trust "shall be construed and regulated in all respects by the laws of the state of Maryland."

**Appointment of Successor Trustee**

In 2003, the Corporate Trustee renounced its right to serve as trustee of the Trust. In 2005, Judith petitioned the Circuit Court for Anne Arundel County to appoint her as successor trustee under Maryland Rule 10-711.[2] By that time, James had died and was survived by two children. Barry and James's two children consented to Judith's appointment as successor trustee.

In October 2005, the court appointed Judith as the Trust's successor trustee. Over the following years, she filed annual fiduciary reports until her death in February 2016.

On November 10, 2021, Lewis of "Elliot N. Lewis, P.A., and Goodman, Meagher & Enoch, LLP"[3] petitioned the court to appoint him as the successor trustee of the Trust. Apparently, 4703 Ritchie Highway had been the subject of a tax sale, and Lewis learned that the sale might net a surplus of funds for the Trust. He was unsure whether any Trust beneficiaries could be located, but he "believe[d] that it would be in the best interest of the administration of the Trust" if he were appointed successor trustee. This would enable him to pursue the recovery of the unclaimed assets.[4]

---

[2] Maryland Rule 10-711(a) provides that the court may, on its own initiative or on a petition filed by any interested person, appoint a substituted or successor fiduciary.

[3] According to Lewis, he was a "1099 contractual employee of a law firm."

[4] We cannot determine from the record whether the surviving Trust beneficiaries were eventually located, and if Lewis made any efforts to identify, locate, and notify them.

On December 8, 2021, the court appointed Lewis as the Trust's successor trustee (hereinafter "trustee") and retained jurisdiction over its administration. Lewis hired an asset recovery company to confirm the ownership of the surplus funds from the tax sale and recover them for the Trust. The company recovered $54,513.24, representing the "foreclosure balance" from the tax sale. In August 2022, Lewis requested the court's approval to use Trust funds to pay the asset recovery company a fee of $21,805.30, which the court granted.

According to Lewis, the other property in Group A (4705 Ritchie Highway) was sold in May 2022 because it was "non-productive." The sale realized net proceeds of $93,581.93.

**Fee Petition**

On September 23, 2022, Lewis filed a "Petition to Authorize Payment of Attorneys' Fees" in the amount of $7,290.00 (the "fee petition"). He explained that as trustee, he "retained the services of Elliot N. Lewis, Esquire, Elliot N. Lewis, P.A.[,] and Goodman, Meagher & Enoch, LLP as attorneys to perform such legal services as were necessary at the [hourly] rate of $450.00" that Lewis performed himself. Lewis included a billing statement itemizing tasks he performed between November 3, 2021, and June 14, 2022. Specific work related to preparing the petition for his appointment, the surplus generated from the tax sale of 4703 Ritchie Highway, and the sale of 4705 Ritchie Highway.[5] Lewis

---

[5] The billing entries include: "11/3/21 Review probate papers/review Circuit Court case/research records/legal research/draft Petition for Appointment of Successor Trustee"; "1/17/22 Draft Complaint for Tax Sale Surplus/title search[;]" "2/3/22 Review and revise

5

reported that the Trust was "solvent as there is presently $148,095.17 in cash in the Trust Account."[6]

On March 14, 2023, the court held a hearing on the fee petition. The court asked about the conflict of interest arising from Lewis's self-employment. It expressed concern that the self-hiring seemed like "double-dipping" instead of hiring an outside firm to do the work.

The court read part of ET § 14.5-802(c)(4) of the Maryland Trust Act:

(c). . . any other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if the transaction is entered into by the trustee with:

* * *

(4) A corporation or any other person or enterprise in which the trustee, or a person that owns a significant interest in the trustee, has an interest that might affect the best judgment of the trustee.

Then the following colloquy ensued:

THE COURT: . . . So do you, do you have an interest in your firm? I'm assuming – are you a partner of the firm?

MR. LEWIS: No.

THE COURT: You're not a partner.

---

contract for unclaimed property/review title report/draft letter to residents of 4705 Ritchie Highway[;]" and "5/19/22 Apply for and obtain Tax ID #[,] Represented trust at settlement of real property[.]"

[6] The amount appears to represent the surplus from the tax sale of 4703 Ritchie Highway ($54,513.24) and the net proceeds from the sale of 4705 Ritchie Highway ($93,581.93) totaling $148,095.17. At the time he filed the fee petition, Lewis had yet to disburse the authorized payment of $21,805.30 from Trust funds to the asset recovery company.

MR. LEWIS: No. I'm a 1099 employee.

THE COURT: 1099. Oh. All right. I'm reading it. A corporation or other person in which the trustee has an interest that might affect the best judgment of the trustee. Whew. All right. Is there anything you want to say–further you want to say? I mean, I've read the petition.

MR. LEWIS: No. Just I, just basically, Your Honor, I believe it's analogous when we handle, you know if I'm handling the estate and there comes a legal issue, then I handle the legal issue. And I petition the [c]ourt . . . for legal fees. . . . If there actually was a conflict, if there was some problem, that's, that's one thing, but I don't see any conflict. I was acting . . . to benefit . . . the trust. . . [b]y doing necessary legal work.

At the end of the hearing, the court denied the fee petition, stating that ET § 14.5-802 "is right on point." On March 16, 2023, the court entered an order denying the fee petition.

Within ten days, Lewis moved to alter or amend the judgment under Maryland Rule 2-534, and the court held another hearing on June 7, 2023. Lewis explained to the court that he provided legal services for the Trust, which yielded $148,095.17 for the Trust, using his specialized skills and expertise as a lawyer. *See* ET § 14.5-806 ("A trustee that has special skills or expertise . . . shall use those special skills or expertise.").

The court admitted into evidence Lewis's billing statement. Lewis stated that the time spent on the tasks in the billing statement was "performed by me" and that "those services were necessary and the fee for that [$7,290] was fair and reasonable."

As for the conflict of interest, Lewis disagreed that ET § 14.5-802(c)(4) applied to the situation. Even if it did, the presumption of a conflict of interest is rebuttable, and no hearing was held to allow him to rebut that presumption. He proffered that the "[r]epresentation of the trust to obtain assets for the benefit of the beneficiaries in no way

7

affected the best judgment of the trustee[.]" He also argued that subsection (f)(2) does not preclude the payment of reasonable compensation to the trustee if it is fair to the beneficiaries. *See* ET § 14.802(f)(2) ("This section does not preclude the following transactions, if fair to the beneficiaries: . . . Payment of reasonable compensation to the trustee[.]").

Lewis added that the court had appointed him as trustee apparently without concern for a conflict of interest. He stated that according to the statute's legislative history, "there's no problem with the trustee doing services" as counsel.

The court remarked on Lewis being compensated as both trustee and attorney:

THE COURT: But you're getting paid as a trustee and as an attorney.

MR. LEWIS: Well, it would be different, different . . . items, yeah. . . . I haven't gotten anything as trustee. I haven't petitioned for trustee.[7]

---

[7] At oral argument, Lewis stated that he intends to petition for trustee commissions later. ET § 14.5-708(a)(1) provides for such commissions:

(i) A testamentary trustee and trustee of any other trust whose duties comprise the collection and distribution of income from property held under a trust agreement or the preservation and distribution of the property are entitled to commissions provided for in this section for services in administering the trusts.

(ii) The amount and source of payment of commissions are subject to the provisions of any valid agreement.

(iii) A court having jurisdiction over the administration of the trust may increase or diminish commissions for sufficient cause or may allow special commissions or compensation for services of an unusual nature.

The statute sets out instructions for determining: (1) income commissions; (2) commissions on the value of the corpus or principal; (3) commissions for selling real or leasehold property; and (4) allowances on the final distribution of a trust. *In re Dory*, 244 Md. App. 177, 192 (2019) (citing ET § 14.5-708(b)–(e)).

THE COURT: Well, you've petitioned as an attorney. You cited in your . . . motion to amend that section 14.5-802(f) provides a presumption in 14.5-802(c)(4) does not prevent payment of reasonable compensation to the trustee. I think you might be able to file a petition as a trustee, but not as an attorney. I think it's a conflict of interest for a trustee to hire himself as an attorney and bill out at the rate of $450 an hour.

Lewis explained that serving in the dual role as trustee and attorney is "done all the time" and is a "common thing. It wouldn't make sense necessarily to . . . get another lawyer [who] would expect to be paid upfront," unlike him.

The court denied the motion to alter and amend, explaining that while it acknowledged that "it's been done historically," "that's not how [the court] read the statute." The court entered an order denying the motion to alter and amend on June 8, 2023, and Lewis noted an appeal the next day.[8]

## DISCUSSION

Lewis argues that the circuit court erred in relying on ET § 14.5-802(c)(4) in denying his fee petition. He maintains that the subsection does not apply to the payment of compensation to the trustee and that there is no prohibition against a trustee performing legal services on behalf of a trust and receiving compensation for those services. Before delving into the merits of the argument, we must address the issue of appealability.

---

[8] Lewis noted a timely appeal from the order denying the fee petition entered on March 16, 2023. Under Maryland Rule 8-202(c), when a Rule 2-534 post-judgment motion has been filed within ten days of the entry of an otherwise final judgment or the entry of another appealable order, the time for filing a notice of appeal is tolled. *Andrews v. O'Sullivan*, 256 Md. App. 532, 540 (2022). The deadline for noting an appeal is stayed until after the resolution of the motion, meaning that a party has until thirty days after a court rules on such a motion to file a notice of appeal. *Carver v. RBS Citizens, N.A.*, 462 Md. 626, 635 (2019).

# I.

## APPEALABILITY

The issue we raise *sua sponte* is whether the order denying Lewis's fee petition is appealable while the case remains open in the circuit court for purposes of the administration of the Trust. *See Zilichikhis v. Montgomery Cnty*., 223 Md. App. 158, 172 (2015) ("Because the absence of a final judgment may deprive a court of appellate jurisdiction, we can raise the issue of finality on our own motion."). If we lack appellate jurisdiction, the appeal must be dismissed. *McLaughlin v. Ward*, 240 Md. App. 76, 83 (2019); Md. Rule 8-602(b)(1).

Lewis supplemented his brief to address the issue pursuant to this Court's order. He maintains that the court's denial of his fee petition is a final judgment. No litigation was pending in connection with the administration of the Trust; the only disputed matter was his fee petition. When the court denied the fee petition, the denial order was intended to be an unqualified and final disposition of the only controversy pending in the circuit court. He contends that if the appeal is dismissed, he would have no other redress to seek compensation for the legal fees.

Appellate jurisdiction is determined by statute. *Kurstin v. Bromberg Rosenthal, LLP*, 191 Md. App. 124, 131 (2010). We have jurisdiction over an appeal when it is taken from a final judgment entered by the circuit court or is otherwise permitted by law. *See* Md. Code, Cts. & Jud. Proc. ("CJP") § 12-301 (1973, 2020 Repl. Vol.) ("[A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court."); *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 273–74 (2009). "Whether a judgment is final,

10

and thus whether this Court has jurisdiction to review that judgment, is a question of law to be reviewed *de novo*." *Balt. Home All., LLC v. Geesing*, 218 Md. App. 375, 381 (2014).

A final judgment is a judgment that "disposes of all claims against all parties and concludes the case." *In re Donald Edwin Williams Revocable Tr.*, 234 Md. App. 472, 490 (2017) (citation omitted). "An order will constitute a final judgment if the following conditions are satisfied: (1) 'it must be intended by the court as an unqualified, final disposition of the matter in controversy;' (2) 'it must adjudicate or complete the adjudication of all claims against all parties;' and (3) 'the clerk must make a proper record of it' on the docket." *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 278 (2014) (citation omitted); *see* Md. Rule 2-602(a).

There are only three exceptions to the final judgment requirement: appeals from interlocutory orders specifically allowed by statute under CJP § 12-303, immediate appeals permitted under Rule 2-602(b), and appeals from interlocutory rulings permitted under the common law collateral order doctrine. *Johnson v. Johnson*, 423 Md. 602, 607 (2011); *Salvagno v. Frew*, 388 Md. 605, 615 (2005). A premature appeal is a jurisdictional defect of no force or effect. *Doe v. Sovereign Grace Ministries, Inc.*, 217 Md. App. 650, 662 (2014).

The court's order denying the fee petition was not "final" in the sense of terminating the proceedings in the circuit court for the administration of the Trust. The order is not the type of interlocutory order specifically allowed by CJP § 12-303 from which he can appeal.

11

Nor is the appeal permitted under Rule 2-602(b).[9] We hold, however, that the collateral order doctrine applies under the circumstances. We explain.

**A.**

**Collateral Order Doctrine**

The common law collateral order doctrine is a "judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments[.]" *Addison*, 411 Md. at 284 (citation omitted). It is a very limited exception to the principle that only final judgments are appealable, and it may be invoked only in extraordinary circumstances when a conjunctive four-part test is met. *Id*. at 284–85.

To qualify as an appealable collateral order, the order must (1) conclusively determine the disputed question, (2) resolve an important issue, (3) resolve an issue that is completely separate from the merits of the action, and (4) be effectively unreviewable if the appeal had to await the entry of a final judgment. *Ehrlich v. Grove*, 396 Md. 550, 563 (2007) (citation omitted). These four requirements "are very strictly applied[.]" *Id.* (citations omitted).

Although no Maryland case is on point, the United States Supreme Court addressed a similar situation about a century and a half ago in *Internal Improvement Fund Trustees v.*

---

[9] Rule 2-602(b) provides: "If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment: (1) as to one or more but fewer than all of the claims or parties; or (2) pursuant to Rule 2-501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only." The circuit court did not make the determination required by Rule 2-602(b) and, as a result, that rule does not apply to the instant case.

*Greenough*, 105 U.S. 527 (1881). The case concerned an appeal from the award of attorneys' fees from a trust fund to a trust beneficiary, a large holder of bonds, who had sued the trustees of the fund for breach of their trust duties. *Id*. at 528–30. The state of Florida had conveyed to the trustees millions of acres of state-owned land to provide security for the bonds. *Id*. at 528. The beneficiary filed suit against the trustees, claiming that the trustees were illegally dissipating the fund and had refused to pay the interest and principal on the bonds. *Id*. at 528–29.

The beneficiary succeeded in the litigation. *Id*. at 529. A large amount of the trust fund was secured and saved; the management of the fund was taken out of the hands of the trustees; and agents were appointed by the court to sell the land, which resulted in the realization of a considerable amount of money to pay the bondholders. *Id*. The beneficiary bore the whole burden of this litigation and advanced most of the necessary expenses to render it effective and successful. *Id*.

Years later, the beneficiary petitioned for an allowance of fees from the fund for his expenses, which the district court granted in various orders. *Id*. at 529–30. While the original action remained pending in the district court for purposes of administration of the trust, an appeal was taken from the orders awarding attorneys' fees and expenses. *Id*. at 531. Ultimately, the Court held that while not a trustee, the beneficiary had acted as a trustee in relation to the common interest and was entitled to reimbursement under the

general principle that a trust estate must bear the expenses of its administration.[10] *Id*. at 532.

Before discussing the merits, the Court addressed whether the appeal was from a final judgment. *Id*. at 531. The Court held that the order granting attorneys' fees from a common fund was final, notwithstanding that the district court was still administering the fund. *Id*. It explained:

> [The orders] are certainly a final determination of the particular matter arising upon the [beneficiary's] petition for allowances, and direct the payment of money out of the fund in the hands of the receiver. Though incidental to the cause, the inquiry was a collateral one, having a distinct and independent character, and received a final decision. The administration of the fund for the benefit of the bondholders may continue in the court for a long time to come, dividends being made from time to time in payment of coupons still unsatisfied. The case is a peculiar one, it is true; but under all the circumstances, we think that the proceeding may be regarded as so far independent as to make the decision substantially a final decree for the purposes of an appeal.

*Id*.; *see Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168–69 (1939) (order denying attorneys' fees to be paid from funds created by bond proceeds was appealable, citing *Greenough*).

Although *Greenough* did not speak in terms of the "collateral order doctrine," it was the precursor of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which adopted the doctrine. *See Swanson v. Am. Consumer Indus., Inc.*, 517 F.2d 555, 560 (7th

---

[10] Our appellate courts have cited *Greenough* for the common-fund doctrine, which recognizes that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund. *See Garcia v. Foulger Pratt Dev., Inc.*, 155 Md. App. 634, 661–63 (2003) (citations omitted); *see also Nethken v. Lusby*, 262 Md. 588, 592 n.2 (1971); *Cent. Sav. Bank of Balt. v. Post*, 192 Md. 371, 378 (1949).

Cir. 1975) (recognizing that *Greenough* was the precursor of *Cohen,* which established the general doctrine of appealability of the collateral orders). Later, the Maryland Supreme Court also adopted this doctrine. *Stewart v. State*, 282 Md. 557, 571 (1978) (recognizing and applying the collateral order doctrine articulated in *Cohen*).

Courts have applied the collateral order doctrine to appeals from orders denying attorneys' fees when proceedings were not pending in the trial court. In *United States Steel Corp. v. United Mine Workers of America*, 456 F.2d 483 (3d Cir. 1972), the Third Circuit held that an order denying the defendant labor unions' motion for attorneys' fees, in an action brought by the plaintiff steel companies for an injunction to end work stoppages, was appealable under the collateral order doctrine. *Id.* at 485–87. After an earlier remand, the steel companies renewed their request for a preliminary injunction, and the parties agreed to an indefinite continuance of the hearing through stipulation, which ended the lawsuit for all practical purposes. *Id*. at 486. Later, the labor unions petitioned for attorneys' fees, which the district court denied. *Id*. An appeal followed. *Id.*

The steel companies moved to dismiss the appeal because the denial order was interlocutory. *Id*. at 486. Another panel of the Court had denied the motion without an opinion, apparently because the order appealed from, although interlocutory, was in practical effect final on the fee issue. *Id.* at 486–87. This was because no further proceedings would have occurred in the district court. *Id*. The Court treated the appeal as a final decision denying the request for attorneys' fees and concluded that the denial order was appealable under the collateral order doctrine. *Id*.

In *In re Derickson*, 640 F.2d 946 (9th Cir. 1981), the Ninth Circuit held that an order denying the award of attorney's fees fell within the collateral order doctrine. *Id*. at 947–48. In that case, an attorney was appointed under the Criminal Justice Act to represent a criminal defendant in a multi-week jury trial that ended in a conviction. *Id*. at 947. Over a year after the defendant was sentenced, the attorney submitted his fee petition for legal services. *Id*. Because the fee petition was presented late, the district court denied it. *Id*. The attorney appealed from the denial order. *Id*.

The Court explained that the denial order was not "final" in the sense of terminating the underlying criminal proceedings in the district court. *Id*. But it concluded that the order fell under the collateral order doctrine announced in *Cohen*. *Id*. at 948. It explained that the order refusing to award attorney's fees conclusively disposed of counsel's fee petition, and the order was not a step that merged in the final judgment entered in the underlying criminal prosecution. *Id*. (citing *Cohen*, 337 U.S. at 546, and *Greenough*, 105 U.S. at 531).

**B.**

**Analysis**

Against the backdrop of these cases, we conclude that the order denying Lewis's fee petition falls within the collateral order doctrine. Regarding the first element of the collateral order doctrine, the denial order conclusively determined the disputed question of whether Lewis was entitled to his attorneys' fees.

As for the second element—that the order resolved an important issue—we have explained:

Importance has a particular meaning in this context. It does not only refer to general jurisprudential importance. Rather, the overarching principle governing "importance" is that, for the purposes of the *Cohen* test, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule.

*Ashcraft & Gerel v. Shaw*, 126 Md. App. 325, 345 (1999) (citation omitted). Determining "importance" is "a function of a balancing process." *Id.* (citation omitted). "[A] court must look to the competing considerations that underlie questions of finality, namely 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* (citation omitted). In determining importance, we consider the order denying fees in the context of this particular case. *See id*. at 346.

Apart from the administration of the Trust, no other proceeding is pending in the circuit court. The administration of the Trust could remain ongoing in the circuit court for a long time. *See Greenough*, 105 U.S. at 531. One can easily imagine the potential consequences of a trustee waiting until the conclusion of the Trust administration before appealing an order that denied his fees entered years earlier. The Trust may require further legal work, which Lewis could more cost-efficiently provide as the attorney. But the circuit court has determined that Lewis is not entitled to compensation for legal services due to a conflict of interest. This means that any further legal work Lewis undertakes will be uncompensated for an indeterminate period. The alternative would be for Lewis to outsource legal services to another firm, which might result in a higher cost to the Trust than if he handled the work himself.

The potential and costs of a piecemeal review are not high under the circumstances, as there is no ongoing trial or adversarial proceeding delayed awaiting appellate resolution of the appeal. *See Shaw*, 126 Md. App. at 346–37. Therefore, the interests that could go unprotected without immediate appellate review of Lewis's compensation are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule. *See id*. at 345 (citation omitted).

Regarding the third element—that the order resolved an issue completely separate from the merits of the action—we adopt the rationale in *Greenough,* and cases cited *supra*. Although the order was incidental to the administration of the Trust, the issue of fees was collateral, having a distinct and independent character for purposes of appeal. *See Greenough*, 105 U.S. at 531.

The fourth element—that the order be effectively non-reviewable on appeal from a final judgment—can be satisfied if "reversal of the [o]rder on appeal *cannot undo what will have already taken place*." *Milburn v. Milburn*, 142 Md. App. 518, 527–28 (2002) (quoting *Shaw*, 126 Md. App. at 345). If we decide that Lewis's appeal from the order denying his fees must await the conclusion of the termination of the Trust and final distribution of Trust assets, the Trust funds would likely be exhausted, leaving nothing to compensate Lewis should we reverse the court's denial order. *See id.* at 528 (explaining that funds in the family law account would be dissipated should the Court decide the issue must await the conclusion of the litigation before the parties are allowed to appeal).

Because we conclude that the denial order entered by the circuit court satisfies the four elements of the collateral order doctrine, we shall entertain the appeal from it.

## II.

## DENIAL OF FEE PETITION

In 2014, the Maryland General Assembly enacted the Maryland Trust Act (the "Act"), codified in Title 14.5 of the Estates and Trusts Article.[11] *Grueff v. Vito*, 229 Md. App. 353, 368 n.7 (2016). The Act is "a modified version of the Uniform Trust Code [("UTC")] drafted by the National Conference of Commissioners on Uniform State Laws."[12] *Hector v. Bank of N.Y. Mellon*, 473 Md. 535, 561 (2021) (citing Senate Judicial Proceedings Committee, Floor Report, Senate Bill 240 (2014)). The Act "provides a more comprehensive codification of the law of trusts within the Maryland Code. It partially codifies the existing law in Maryland governing trusts, but also contains modifications and additions to existing law." *Id*. (citing Senate Bill 240, *supra*).

The Act provides that "[t]he common law of trusts and principles of equity supplement this title, except to the extent modified by this title or another statute of this State." ET § 14.5-106. This means that the Act "does not displace all existing trust law. As long as the [Act] does not specifically change common law in Maryland, that law remains in effect." *See* John P. Edgar, *Comparison of Maryland Trust Act to Current Maryland Law*

---

[11] The provisions of the Act "appl[y] to all trusts created before, on, or after January 1, 2015[.]" ET § 14.5-1006(a)(1). The Act "do[es] not apply to judicial proceedings concerning trusts commenced before January 1, 2015[.]" ET § 14.5-1006(a)(3). However, a "rule of construction or presumption provided in [the Act] applies to trust instruments executed before January 1, 2015, unless there is a clear indication of a contrary intent in the terms of the trust[.]" ET § 14.5-1006(a)(4).

[12] The UTC was drafted in close coordination with the writing of the Restatement (Third) of Trusts. UTC, *Prefatory Note*, at 4 (2023).

*and the Uniform Trust Code*, in Maryland State Bar Association, *New Maryland Trust Act*, at 107–08, Course 5134-14 (Sept. 11, 2014) (MSBA, 2014) ("Edgar"). In addition, the legislative history accompanying the Act states that "courts may look to the Restatement of the Law of Trusts or case law in other jurisdictions where Maryland statutory or case law does not resolve an issue." *Hector*, 473 Md. at 567 (citing Senate Bill 240, *supra*).

Because of the Act's close relationship with the common law of trusts, we begin with an overview of the common law that pertains to the trustee's duty of loyalty. Understanding this will contextualize our later discussion about ET § 14.5-802.

**A.**

**Common Law of Trusts on Duty of Loyalty**

It is well established in Maryland common law that a trustee owes to the beneficiaries of a trust duties of administration, prudence, and loyalty. *Hastings v. PNC Bank, N.A.*, 429 Md. 5, 25 (2012).

> Broadly put, the duty prohibits a trustee from using the property of a beneficiary for the trustee's own purposes. A trustee is otherwise prohibited from placing himself in any position where his self-interest will or may conflict with his duties as trustee, and using the advantage of his position to gain any benefit for himself at the expense of the beneficiary. A trustee also must refrain from using the advantages of the fiduciary relationship for the benefit of a non-beneficiary third party.

*Id.* (citations and internal quotation marks omitted).

Divided-loyalty transactions are sometimes interchangeably called "self-dealing" and "conflict of interest," but the terms are not synonymous. *See* Restatement (Third) of Trusts § 78 cmts. d ("self-dealing") & e ("other conflicting interests or loyalties"); *French v. Wachovia Bank, N.A.*, 722 F.3d 1079, 1086 (7th Cir. 2013) ("Self-dealing is one type of

20

a conflict of interest."). Self-dealing occurs when a trustee engages in transactions on behalf of the trust with their own personal interests. Restatement (Third) of Trusts § 78 cmt. d. This could involve the trustee personally profiting from a transaction with a trust or other estate of which they are a fiduciary, as when a trustee buys from or sells to the trust or acts as a broker in the sale. *Madden v. Mercantile-Safe Deposit & Tr. Co*., 27 Md. App. 17, 33 (1975). This could also involve the trustee personally borrowing money from or lending funds to the trust or hiring themselves to perform services for the trust. Restatement (Third) of Trusts § 78 cmt. d.

When a trustee, in their capacity as trustee, is involved in transactions with individuals they are closely related to or associated with, such as family members, personal agents, personal attorneys, or officers or directors of a corporate trustee, it is not considered self-dealing. However, these transactions still present a conflict between the trustee's fiduciary duties and personal interests. Restatement (Third) of Trusts § 78 cmt. e.

With self-dealing transactions, Maryland courts have generally held that such transactions, "in the absence of full disclosure and consent of all beneficiaries, [are] voidable by the beneficiaries, with no need to show unfairness." *Madden*, 27 Md. App. at 33; *accord* Restatement (Third) of Trusts § 78 cmt. b (under the "so-called 'no further inquiry' principle[,] it is immaterial that the trustee may be able to show that the action in question was taken in good faith, that the terms of the transaction were fair, and that no profit resulted to the trustee.").

In contrast, for transactions not involving self-dealing but with those closely related to the trustee, there is a presumed conflict of interest that can be rebutted by the trustee,

21

demonstrating that the transactions are "fair, honest, and equitable." *Madden*, 27 Md. App. at 39 (citing *Hammond v. Lyon Realty Co.*, 163 Md. 442, 470 (1932), and *Cumberland Coal and Iron Co. v. Parish*, 42 Md. 598, 606–07 (1875)).

*i.*

### *Exclusions and Exceptions to Strict Prohibition Against Divided-Loyalty Transactions*

"[R]estrictions associated with the duty of loyalty are not absolute" and are subject to exclusions. *Hastings*, 429 Md. at 25. A trustee may engage in an otherwise prohibited course of action if authorized by the trust instrument, beneficiary consent, or judicial approval. *See id*. at 25–26 (citations omitted); *see* John H. Langbein, *Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest*, 114 Yale L. J. 929, 963 (2005) ("Langbein") ("Three doctrines of exclusion, long established in the common law of trusts, are settlor authorization, beneficiary consent, and advance judicial approval.").

Likewise, specific categories of transactions are exempt from the strict conflict-of-interest prohibitions that apply to trustees. *See* Restatement (Third) of Trusts § 78 cmt. c. "For these exceptional situations, although conflicting-interest temptations do exist for the trustee, generalized considerations of efficiency and beneficiary interest, as well as the minimal or manageable degrees of risk involved, justify departure from the trust law's strict, prophylactic approach to issues of fiduciary loyalty." *Id.*; *see* Langbein at 968 ("The categoric exceptions . . . represent legislative or judicial determinations that a class of conflict-of-interest transactions is so likely to be beneficial to the beneficiary that the sole interest rule should be abrogated without case-specific advance approval.").

One specific exception to the duty of loyalty is a trustee's entitlement to "reasonable compensation" for services provided as a trustee. Restatement (Third) of Trusts § 78 cmt. c(4) ("The strict prohibitions against transactions by trustees involving conflicts between their fiduciary duties and personal interests do not apply to the trustee's taking of reasonable compensation for services rendered as trustee."). The exception extends to certain self-employment where a trustee who possesses special skills uses those skills to administer the trust. *See* Restatement (Third) of Trusts § 78 c(5) and d.

> Although . . . self-hiring by a trustee is generally prohibited as a form of self-dealing[,] in some circumstances a trustee may provide to the trust, and receive additional compensation for, special services that—while not required of trustees generally—are necessary or appropriate to prudent administration of the trust. It is reasonable to expect that a trustee who possesses special skills and facilities that are useful in trust administration will use those skills and facilities in administering the trust, and also to expect that the trustee's familiarity with the purposes and affairs of the trust will result in efficiency and cost advantages to the trust.

*Id*. at cmt. c(5); *see* George T. Bogert et al., *Bogert's The Law of Trusts and Trustees* § 543, Westlaw (database updated June 2023) ("Bogert") (explaining that in some situations, "the trust and beneficiaries may benefit from efficiency and cost advantages if the trustee provides the extra services").

It follows that "[a] trustee who renders special services in the administration of a trust, for example as an attorney . . . may be awarded compensation for such services when it is advantageous to the trust that the trustee rather than another perform those services." Restatement (Third) of Trusts § 38 cmt. d; *see* 3 Austin Wakeman Scott & Mark L. Ascher, *Scott and Ascher on Trusts* § 17.2 at 1207 (6th ed. 2022) ("Scott") ("a trustee who has special skills, such as a lawyer . . . is entitled to use them on behalf of the trust, and to

23

compensate himself or herself for doing so."); Bogert § 543 ("If a trustee employs a firm in which the trustee is a member to do specialized work for the trust, there is a conflict of interest and compensation may be permitted or denied according to the rule applicable to self-employment contracts.").

Commentators recognize the potential risk of having a trustee fulfill dual roles, but they suggest that a court can safeguard against the danger of self-hiring by awarding compensation if services are reasonably necessary:

> Although the duty of loyalty does not strictly prohibit the trustee from providing this type of compensated services for which the trustee has a special competence, the trustee is not relieved of the normal duty to act with prudence and in the interest of the beneficiaries in determining whether the services are reasonably necessary and by whom they may best be provided. Thus, the risks inherent in sacrificing independence and objectivity of judgment in deciding these matters must be justifiable in terms of the expected benefits to the trust through greater efficiency and reduced time and expense in allowing the trustee to render the services.

Restatement (Third) of Trusts § 78 cmt. c(5); *see* 4 *Scott* § 21.1.2 at 1763 ("[t]he danger is that if trustees are entitled to compensation for extra services, they will be tempted to create jobs for themselves. . . . The question is whether the fact that the court will not award extra compensation unless it believes the trustee deserves it, and will award only what the court believes the trustee deserves, is sufficient protection. Perhaps it is."); Langbein at 977 ("The function of the reasonableness standard is to limit compensation to an amount that bears an appropriate relationship to the best interest of the beneficiary.").

Maryland common law aligns with this exception outlined in the Restatement. "Maryland has long recognized the general proposition that legal costs are a necessary part of the cost of administering a trust." *Saulsbury v. Denton Nat'l Bank*, 25 Md. App. 669,

24

672 (1975). "It is an unquestioned rule that when a trustee in a court of equity finds it necessary to obtain legal assistance in the management of the trust estate, the court will allow him such reasonable fees as he may be required to pay in properly taking the advice and procuring the direction of counsel." *Cook v. Boehl*, 188 Md. 581, 589 (1947); *see Sokol v. Nattans*, 26 Md. App. 65, 91 n.22 (1975) ("The general rule is that 'when a trustee finds it necessary to employ or advise with counsel as to the proper management of the trust estate, he will be allowed, under the head of just allowances, such reasonable fees as he may have paid in properly taking the opinion and procuring the direction and assistance of counsel.'" (citations omitted)).

"In Maryland[,] the practice of naming counsel as trustees under decrees is almost universal. In a proper case[,] the same person may be allowed commissions as trustee and a counsel fee as attorney." *Blondell v. Orem*, 201 Md. 138, 144 (1952); *see Green v. Lombard*, 28 Md. App. 1, 9 (1975) ("If it is deserved or necessary in order to properly administer an estate, a [trustee] may charge up to the maximum commission established by law, employ himself as attorney for the estate if one is required . . . and acquire the services of outside counsel should that be necessary and desirable[.]").

*Taylor v. Denny*, 118 Md. 124 (1912) is the seminal case on compensating an attorney-trustee for providing legal services related to a trust. In that case, the trustees sold various parcels of land and were entitled to commissions based on the sales. *See id*. at 126–29. The trustees filed a complaint, which prompted litigation involving the estate's beneficiaries. *Id*. at 129–30. One of the trustees was an attorney who rendered legal services for the trustees. *Id*. at 130. The trustees did not represent all interested persons, and some

25

contentions were hostile to at least some parties. *Id.* at 133. The trustees later sought an allowance of $2,000 in attorneys' fees, which the trial court granted. *Id.* at 130.

On appeal, the Supreme Court of Maryland recognized the dual role of trustee and attorney in deciding whether the trustees were entitled to the allowance for attorneys' fees and, if so, the amount. *Id*. at 129–34. It concluded that the trustees were entitled to some allowance for counsel fees and that one of the trustees was also an attorney "would not deprive him of proper compensation for services rendered by him as attorney for the trustees." *Id*. at 129–30. The Court explained:

> Where a trustee is also an attorney, and renders legal services in connection with the trust estate, he will, in a proper case, be entitled to be paid for his professional services out of the common fund, as though the two capacities were separate.

*Id*. at 130 (quoting *Title Guarantee & Tr. Co. v. Burdette*, 104 Md. 666, 671 (1906)).

The Court recognized that "[i]t is not always easy to distinguish between the duties performed *as trustee*, and those performed *as counsel*, when the same person acts in both capacities; but there are certain well-settled principles which are controlling when the right of trustees to an allowance for counsel fees is involved." *Id*. at 130–31. These principles are:

> [W]hen a trustee finds it necessary to employ or advise with counsel as to the proper management of the trust estate, he will be allowed, under the head of just allowances, such reasonable fees as he may have paid in properly taking the opinion and procuring the direction and assistance of counsel.
>
> . . . It is the practice of the court, under the head of just allowances, to reimburse the trustee when administering his trust under its direction all his reasonable costs and expenses, including money expended by him in properly taking the opinion and procuring the direction and assistance of counsel.

26

> . . . [T]he trustee is entitled to be allowed attorney's fees paid his counsel, where it appears that the fees were fair and reasonable, and that the services rendered were indispensable to the trustee in the proper execution of his trust.
>
> . . . [W]here a trustee employs an attorney to render necessary services for the benefit of all the parties interested in the estate, or seeks advice for the proper administration of his trust, a reasonable fee, though not specially provided for in the decree, is to be allowed for such services out of the common fund in his possession.

*Id*. at 131 (cleaned up).

Based on these principles, the Court held the attorney-trustee was entitled to "fair compensation for [legal] services *as counsel*[.]" *Id*. at 134. It recognized the difficulty in determining with precision the value of services rendered by counsel as distinguished from those as a trustee and that the safer rule is for the appellate court to leave the amount of the fee to be determined by the trial court. *Id*. at 133. But the Court explained it was familiar enough with the record and was satisfied that the attorney-trustee was not entitled to compensation for some services. *Id*. at 133–34. It therefore affirmed in part and reversed in part, reducing the sum to $1,000. *Id*. at 134.

## B.

## ET § 14.5-802

With the common law in mind, we now turn to the statutory provision relied on by the circuit court in denying Lewis's fee petition. In pertinent part, ET § 14.5-802 provides:

> (a) A trustee shall administer the trust solely in the interests of the beneficiaries.
>
> (b) Subject to the rights of persons dealing with or assisting the trustee as provided in § 14.5-909 of this title, a sale, an encumbrance, or any other transaction involving the investment or management of trust property entered

27

into by the trustee for the personal account of the trustee or which is otherwise affected by a conflict between the fiduciary and personal interests of the trustee is voidable by a beneficiary affected by the transaction unless:

(1) The transaction was authorized by the terms of the trust;

(2) The transaction was approved by the court;

(3) The beneficiary did not commence a judicial proceeding within the time allowed by law;

(4) The beneficiary consented to the conduct of the trustee, ratified the transaction, or released the trustee in compliance with § 14.5-907 of this title; or

(5) The transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming the trustee.

(c) A sale, an encumbrance, or *any other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if the transaction is entered into by the trustee with:*

(1) The spouse of the trustee;

(2) A descendant, sibling, or parent of the trustee or a spouse of a descendant, sibling, or parent of the trustee;

(3) An agent or attorney of the trustee; or

*(4) A corporation or any other person or enterprise in which the trustee, or a person that owns a significant interest in the trustee, has an interest that might affect the best judgment of the trustee.*

*\* \* \**

*(f) This section does not preclude the following transactions, if fair to the beneficiaries:*

(1) An agreement between a trustee and a beneficiary relating to the appointment or compensation of the trustee;

28

*(2) Payment of reasonable compensation to the trustee;*

(3) A transaction between a trust and another trust, decedent's estate, or guardianship estate of which the trustee is a fiduciary or in which a beneficiary has an interest; or

(4) An advance by the trustee of money for the protection of the trust.

(Emphasis added).

ET § 14.5-802 is a codification, in large part, of UTC § 802, which provides in relevant part:

(a) A trustee shall administer the trust solely in the interests of the beneficiaries.

(b) Subject to the rights of persons dealing with or assisting the trustee as provided in Section 1012, a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:

(1) the transaction was authorized by the terms of the trust;

(2) the transaction was approved by the court;

(3) the beneficiary did not commence a judicial proceeding within the time allowed by Section 1005;

(4) the beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with Section 1009; or

(5) the transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming trustee.

(c) A sale, encumbrance, *or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with:*

(1) the trustee's spouse;

29

(2) the trustee's descendants, siblings, parents, or their spouses;

(3) an agent or attorney of the trustee; or

*(4) a corporation or other person or enterprise in which the trustee, or a person that owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment.*

* * *

*(h) This section does not preclude the following transactions, if fair to the beneficiaries:*

(1) an agreement between a trustee and a beneficiary relating to the appointment or compensation of the trustee;

*(2) payment of reasonable compensation to the trustee;*

(3) a transaction between a trust and another trust, decedent's estate, or [conservatorship] of which the trustee is a fiduciary or in which a beneficiary has an interest;

(4) a deposit of trust money in a regulated financial-service institution operated by the trustee; or

(5) an advance by the trustee of money for the protection of the trust.

According to the comments under UTC § 802, "[m]ost but not all violations of the duty of loyalty concern transactions involving the trust property, but breaches of the duty can take other forms." UTC § 802, at 127 (2023).[13]

Subsections (b) and (c) of ET § 14.5-802 treat divided-loyalty transactions differently based on the type, consistent with common law. The UTC comments provide

---

[13] The statutory text of the UTC is supplemented by its comments, which "are a useful explanation of the statutory provision and often discuss the common law basis for the statutes." Edgar at 105.

helpful guidance in understanding how each type is treated. The comments for UTC § 802(b) (self-dealing transactions) explain that:

> [a] transaction affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary who is affected by the transaction. Subsection (b) carries out the "no further inquiry" rule by making transactions involving trust property entered into by a trustee for the trustee's own personal account voidable without further proof. Such transactions are irrebuttably presumed to be affected by a conflict between personal and fiduciary interests. It is immaterial whether the trustee acts in good faith or pays a fair consideration.

UTC § 802 cmt. at 127.

In contrast, "[t]he rule is less severe with respect to transactions involving trust property entered into with persons who have close business or personal ties with the trustee." *Id*. The comments for UTC § 802(c) (other-conflicting-interest transactions) explain that:

> a transaction between a trustee and certain relatives and business associates is presumptively voidable, not void. Also presumptively voidable are transactions with corporations or other enterprises in which the trustee, or a person who owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment. The presumption is rebutted if the trustee establishes that the transaction was not affected by a conflict between personal and fiduciary interests. Among the factors tending to rebut the presumption are whether the consideration was fair and whether the other terms of the transaction are similar to those that would be transacted with an independent party.

*Id.* at 127–28.

Notably, ET § 14.5-802(f)(2) excludes the "payment of reasonable compensation to the trustee" from prohibited transactions as long as it is "fair to the beneficiaries[.]" This provision is consistent with the common law and the analog UTC subsection. *See* UTC 802(h)(2), *supra*; Restatement (Third) of Trusts § 78 cmt. c(4) (noting that the exception

31

of the trustee's taking of reasonable compensation for services rendered as trustee "is stated in [UTC] § 802(h)(2)").[14]

ET § 14.5-802(f)(2) does not define what constitutes "fair" or "reasonable compensation." Maryland caselaw uses the terms "fair" and "reasonable" interchangeably and in conjunction with what is "necessary" for the benefit of the trust. *See Taylor*, 118 Md. at 131, 134 ("fair compensation," "fair and reasonable," and "necessary services"); *Green*, 28 Md. App. at 9 (describing what an attorney-fiduciary charged over ten years as "undeserved, unnecessary and exorbitant" in relation to the commission, self-employment as an attorney for the estate, and employment of outside counsel). *Accord Lyons ex rel. Lawing v. Holder*, 163 P.3d 343, 348 (Kan. App. 2007) (recognizing that "fair" is not defined under Kansas's analog of subsection (f)(2) but characterizing it in terms of "reasonableness" when determining trustee's fees); UTC § 708 cmt. at 121 (Although the UTC does not take a specific position on whether dual fees may be charged when a trustee hires their law firm to represent the trust, the "trend is to authorize dual compensation as long as the overall fees are reasonable.").

The Restatement lists relevant factors for determining "reasonable compensation" for the trustee, consistent with Maryland law:

> Local custom is a factor to be considered in determining compensation. Other relevant factors are: the trustee's skill, experience and facilities, and the time devoted to trust duties; the amount and character of the trust property; the

---

[14] Just as in the Restatement, the Act also recognizes that "[a] trustee that has special skills or expertise . . . shall use those special skills or expertise." ET § 14.5-806; *accord* Restatement (Third) of Trusts § 78 cmt. c(5) (explaining that it is reasonable to expect a trustee with special skills will use those skills in administering the trust and that the trustee's familiarity with the trust will result in efficiency and cost advantages to the trust.).

degree of difficulty, responsibility, and risk assumed in administering the trust, including in making discretionary distributions; the nature and costs of services rendered by others; and the quality of the trustee's performance.

Restatement (Third) of Trusts § 38 cmt. c(1); *accord Schloss v. Schloss*, 162 Md. 346, 351–52 (1932) (for allowance of commissions to trustees, factors include the amount of labor required, the amount of risk incurred, the character of the duty to be performed, the time and attention necessary to be bestowed upon it, and the amount of the estate which is the subject of the trust (citing *Nat'l Bank of Balt. v. Dulaney*, 96 Md. 159, 176 (1903))); *Sokol*, 26 Md. App. at 85 (commission based on income was enough since final distribution involved little additional labor); *Spencer v. McMullen*, 198 Md. 90, 98 (1951) (when a court appoints an attorney to protect the interests of the beneficiaries in a trust proceeding, factors to determine reasonable compensation include the character and extent of the services, the time employed, the importance of the question, and the fidelity and diligence of counsel, the magnitude of the interests involved, the legal difficulties met, the length of time engaged, the skill and diligence displayed, and the practical result obtained by services rendered to the receiver and in the interest of the estate; fundamental consideration is that the compensation should be confined to work which was "reasonably necessary" for the proper administration of the trust (citing *Taylor*, *supra*, and *Cnty. Corp. of Md. v. Semmes*, 169 Md. 501, 527 (1936))); *Goldman v. Eisinger*, 289 Md. 611, 618–19 (1981) ("the benefit obtained from the services rendered by an attorney appointed by the court is an appropriate factor to be taken into account in the determination of the amount of a reasonable fee." (citing *Spencer*, *supra*, and other cases)); *Estate of Castruccio v. Castruccio*, 247 Md. App. 1, 49 (2020) ("in proceedings concerning trusts and estates, courts widely consider the size

33

of the estate in relation to the fees when awarding attorneys' fees" (citations omitted)); Md. Rule 19-301.5 (nonexclusive list of factors to be considered in determining the reasonableness of a fee).[15]

## C.

## Analysis

Lewis argues that the circuit court erred in relying on ET § 14.5-802(c)(4) in denying his fee petition. He continues to claim, as he did below, that there is no prohibition against a trustee, who is also an attorney, from providing legal services for a trust and getting paid for it. He also argues that the subsection does not apply to his request for compensation.

Because the issue concerns the circuit court's authority to determine a trustee's compensation under the Maryland Trust Act, we accord no deference to the court's interpretation of the statute. *See In re Dory*, 244 Md. App. 177, 188 (2019). Although we yield to the court's factual determinations, we do not defer to its legal determinations. *Id.*

---

[15] The factors enumerated under Rule 19-301.5 are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and (8) whether the fee is fixed or contingent.

"Maryland courts are permitted to consider relevant factors besides those set forth in Rule [19-301.5] when calculating a reasonable fee award." *Castruccio*, 247 Md. App. at 64.

We note that "on the court's own motion, or as otherwise provided by law, the court may intervene actively in the administration of a trust, fashioning and implementing remedies as the public interest and the interests of the beneficiaries may require." ET § 14.5-201(a). Nevertheless, the court must apply the law according to the correct legal standard. *See Dory*, 244 Md. App. at 203 ("trial courts do not have discretion to apply incorrect legal standards and a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion" (cleaned up)).

Applying the relevant statutes and caselaw to the circumstances here, we conclude that the court erred in interpreting ET § 14.5-802(c)(4) to mean that a conflict of interest strictly prohibited Lewis from an allowance for reasonable compensation as trustee when he hired himself as counsel to perform legal services for the Trust. Regardless of whether the self-employment was self-dealing under ET § 14.5-802(b) or other conflict of interest under subsection (c)(4), the compensation Lewis sought as trustee was for legal work that he purportedly performed using his specialized skill as an attorney. *See* ET § 14.5-806 ("A trustee that has special skills or expertise . . . shall use those special skills or expertise."). Therefore, the payment of "reasonable compensation" to Lewis is not precluded under subsection (f)(2) if "fair to the beneficiaries[.]"

As mentioned, the Act provides that "[t]he common law of trusts and principles of equity supplement this title, except to the extent modified by this title or another statute of this State." ET § 14.5-106. The history of ET § 14.5-802 reveals no intention by the General Assembly to modify the common law of trusts and principles of equity to preclude a trustee from an allowance of reasonable compensation for performing legal services as counsel in

35

the proper case. *See Taylor*, 118 Md. at 130; *Blondell*, 201 Md. at 144; *Green*, 28 Md. App. at 9.

We reverse and remand the judgment of the circuit court with directions to make findings of fact as to the fair and reasonable compensation for legal services performed by Lewis for the Trust. On remand, the court should hold a hearing and permit Lewis to present any additional evidence supporting the fee petition.

**JUDGMENT REVERSED. CASE IS REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS WAIVED.**